United States District Court
District of Massachusetts

| | |
|---|---|
| Lee Kuznarowis, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Tobey Hospital and Southcoast ) <br> Health Systems, Inc., ) <br> ) <br> Defendants. ) | Civil Action No. <br> 16-11432-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case involves allegations of discrimination by Tobey Hospital ("the Hospital") and its operator Southcoast Health Systems, Inc. (collectively "defendants") against Lee Kuznarowis ("Kuznarowis" or "plaintiff"), a registered nurse,. Plaintiff asserts that defendants 1) violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., (Count I) 2) discriminated against him based on age in violation of M.G.L. c. 151B § 4, (Count II) 3) violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., (Count III) 4) discriminated against him based on gender in violation of M.G.L. c. 151B § 4, (Count IV) 5) retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), (Count V) 6) retaliated against him in

- 1 -

violation of ADEA, 29 U.S.C. § 621 et seq., (Count VI) and 7) retaliated against him in violation of M.G.L. c. 149 §185 (Count VII).

Defendant moves for summary judgment on all claims. Because no genuine issues of material fact exist as to any claim, defendant's motion for summary judgment will be allowed.

## I. Background

In 1993, the Hospital hired Kuznarowis, then 33 years old, as a Respiratory Therapist. He began working as a Registered Nurse at the Hospital in approximately 2000. He was first assigned to the Intensive Care Unit as an ICU RN but then re-assigned to the Perioperative Department. In 2013 and 2014, his staff performance evaluation rated him between a "good, solid performer" and an "excellent performer".

Lynn Bordwick ("Bordwick"), the Perioperative Department Nurse Manager at the Hospital, became plaintiff's manager in 2006. Bordwick informed the Post Anesthesia Care Unit ("PACU") that length of stay was a concern and that patients should be discharged from PACU once they met clinical criteria.

In October, 2013, plaintiff applied for a Team Leader position at the Hospital, for which he was qualified. Bordwick was responsible for hiring the Team Leader. Tara Ignacio

("Ignacio"), a female nurse with less experience than plaintiff was ultimately selected for the position.

In August, 2014, Ignacio yelled at Kuznarowis to move a female patient along more quickly. Kuznarowis responded that he was charting and that he would move the patient when he was finished. Kuznarowis complained of Ignacio's behavior to Sue Gillis ("Gillis"), the lead RN.

In October, 2014, plaintiff, Bordwick, Associate Chief Nursing Officer Susan Mangini ("Mangini") and Human Resources representative Janet Peirce ("Peirce") met to discuss Bordwick's concerns about plaintiff. Bordwick told Mangini that Kuznarowis tended to keep his patients longer than other RNs and that her prior experience indicated that extended patient stays and missing documentation were indicative of possible drug diversion. The parties dispute whether, during that meeting, plaintiff was accused of having a substance abuse problem. At the conclusion of the meeting, Kuznarowis was placed on leave.

On November 20, 2014, plaintiff was terminated. The person hired to replace him in PACU was Scott Rounseville, a male five years older than Kuznarowis. Mangini prepared a complaint against Kuznarowis which a Southcoast HR manager filed with the Board of Registration in Nursing ("BORN") in December, 2014. Plaintiff maintains that the Hospital used manipulated data to demonstrate that he was dispensing more controlled substances

than the other nurses. He argues that the standard deviation analysis used by the Hospital to document deficiencies in his performance was attributable to the entire staff, not solely to his practices.

On September 8, 2015, Kuznarowis filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In July, 2016, plaintiff brought this suit against defendants. They subsequently filed their pending motion for summary judgment which is the subject matter of this memorandum.

## II. Analysis

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**A. Timeliness**

Under the relevant statutes of limitations, plaintiff is required to file a charge of discrimination within 300 days after the unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1) (". . . within three hundred days after the alleged unlawful employment practice occurred . . ."); cf. 29 U.S.C. § 626(d)(1)(B) (". . . within 300 days after the alleged unlawful practice occurred . . ."); M.G.L. c. 151B, § 5 ("Any complaint filed pursuant to this section must be so filed within 300 days after the alleged act of discrimination."). Kuznarowis filed his charge with the EEOC on September 8, 2015. Accordingly, acts that occurred before November 14, 2014, are not actionable.

Plaintiff concedes that the continuing violation doctrine does not resuscitate the untimely acts but submits that incidents before November 14, 2014, serve as "background evidence". Such incidents may be considered if the prior actions are of "the same type of discriminatory act or practice [that] has been timely challenged." Rathbun v. Autozone, Inc., 361 F.3d 62, 76 (1st Cir. 2004) (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977). Similarly, acts that occurred subsequent to the challenged acts may be referenced so long as they are relevant. Id.

Untimely allegations such as the hiring of Ignacio as Team Leader in 2014 cannot serve as the basis for a claim. See Rivera v. Puerto Rico Aqueduct & Sewers Auth., 331 F.3d 183, 188 (1st Cir. 2003). Each "discrete discriminatory act transpires only at the time it takes place." Id. (citing National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)). Thus, the only timely act upon which plaintiff may rely is his November 20, 2014, termination.

**B. Age and gender discrimination**

Under both state and federal law, it is unlawful for a private sector employer to discharge an employee because of his age or gender. 29 U.S.C. § 621 et seq.; M.G.L. c. 151B § 4; 42 U.S.C. § 2000e et seq.; M.G.L. c. 151B § 4.

Where an employee lacks direct evidence that an employer's actions were motivated by animus, Massachusetts and federal courts apply the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 97 (2009) (citing McDonnell Douglas, 411 U.S. at 802); Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 673 (1st Cir. 1996). Under that framework, 1) the plaintiff must establish a prima facie case of discrimination 2) the defendant may rebut that case by offering a legitimate, nondiscriminatory reason for its employment action, requiring plaintiff 3) to produce evidence demonstrating that defendant's stated reason was a pretext. Haddad, 455 Mass. at 97 n. 14; Ingram v. Brink's, Inc., 414 F.3d 222, 230 (1st Cir. 2005). The "elements of the prima facie case will vary depending on . . . the type of discrimination alleged" and the protected category at issue. Knight v. Avon Prod., Inc., 438 Mass. 413, 420 n. 4 (2003).

To establish a prima facie case of discrimination, a plaintiff must demonstrate that

> (1) [he is] a member of a protected class; (2) [he is] qualified for [his] job; (3) [he] suffer[ed] an adverse employment action at the hands of [his] employer; and (4) [there is] some evidence of a causal connection between [his] membership in a protected class and the adverse employment action.

Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 313 (1st Cir. 2016) (quoting Bhatti v. Trs. of Bos. Univ., 659 F.3d 64,

70 (1st Cir. 2011)); Knight, 438 Mass. at 423 (requiring a "logical connection between each element of the prima facie case and the illegal discrimination") (quoting O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311-312 (1996)).

In response to the plaintiff's establishment of a prima facie case, the employer can rebut the presumption of discrimination "by articulating a legitimate, nondiscriminatory reason for its . . . decision." Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 441 (1995); Ingram, 414 F.3d at 230. If the employer does so, the plaintiff must then demonstrate that the defendant's proffered reason for its employment decision was not the real reason but rather a pretext for discrimination. Ingram, 414 F.3d at 230; Lipchitz v. Raytheon Co., 434 Mass. 493, 501 (2001). Under Massachusetts, but not federal, law "if the fact finder is persuaded that one or more of the employer's reasons is false," it may infer a discriminatory motive. Lipchitz, 434 Mass. at 501.

**1. Prima facie case of age discrimination**

Scott Rounseville, who replaced plaintiff in the PACU, is male and five years older than plaintiff. An inference of unlawful discrimination "cannot be drawn from the replacement of one worker with another worker insignificantly younger." O'Connor, 517 U.S. at 312-13; cf. Knight, 438 Mass. at 425 ("We conclude that an age disparity of less than five years, by itself, is too insignificant to support a prima facie case of

age discrimination."). Because plaintiff has not shown a "causal connection" between his termination and his age, he has failed to make a prima facie case of age discrimination under federal and state law. "While the burden of establishing a prima facie case is not onerous, the plaintiff" is still required make his case. Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 313 (1st Cir. 2016).

Defendant's motion for summary judgment will, with respect to Counts I and II, be allowed.

**2. Legitimate, nondiscriminatory reason**

Plaintiff declares that "Tobey's complaint to the Board is the only reason it can use for firing Lee." Defendants respond that plaintiff was terminated because of his "substandard medication administration and documentation practices" and his inability to explain those discrepancies.

Associate Chief Nursing Officer Susan Mangini reviewed PACU, patient medical and pharmacy department records for patients of all nurses in the PACU. That review identified unexplained narcotics and medication discrepancies in Kuznarowis's documentation. The Hospital met with plaintiff on four occasions to discuss the results of that investigation. According to the Hospital, Kuznarowis was placed on leave, and ultimately terminated, because of his suspicious and subpar handling of narcotics and other medications.

Plaintiff rejects that purported reason for his termination. He maintains that "it would not be possible for Mangini" to review the volume of documentation that she claims. He insists that the Hospital's story is contradictory because "either Mangini was conducting a review of all nurses or she reviewed the records for the plaintiff." Nowhere does he point, however, to any specific facts demonstrating that the Hospital terminated him because of his age or gender. Likewise, he proffers no facts demonstrating that defendants' stated consideration of narcotic and medication administration was pretextual. "The mere allegation of an illegal motive" is insufficient to survive summary judgment. Barss v. Tosches, 785 F.2d 20, 22 (1st Cir. 1986). Plaintiff offers nothing more.

Kuznarowis challenges the Hospital's account of certain events. The relevant inquiry does not, however, depend on their accuracy but rather on the employer's

> explanation of its conduct, together with any other evidence, [that] could reasonably be seen by a jury not only to be false

but to suggest discriminatory animus. Ronda-Perez v. Banco Bilbao Vizcaya Argentaria--Puerto Rico, 404 F.3d 42, 44 (1st Cir. 2005). Here, the plaintiff has proffered no such evidence. "Casting aspersions is not enough." Murray v. Kindred Nursing Centers W. LLC, 789 F.3d 20, 27 (1st Cir. 2015).

Murray bears striking similarities to this case. In both cases, plaintiff-nurses sued for discrimination after they were terminated for allegedly diverting drugs. As the Murray court made clear,

> Whether [plaintiff] actually diverted drugs is of no moment. [Defendant's] reasonable suspicion was sufficient to justify terminating [plaintiff's] employment.

Id. at 26.

Under Massachusetts law, "if the fact finder is persuaded that one or more of the employer's reasons" is dissembling, it may infer a discriminatory motive. See Lipchitz v. Raytheon Co., 434 Mass. 493, 501 (2001). Even under that more favorable framework, however, an employee only prevails when an explanation has "no reasonable support in the evidence or is wholly disbelieved (and hence is transparently a pretext)." Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 443 (1995) (quoting Wheelock Coll. v. Massachusetts Comm'n Against Discrimination, 371 Mass. 130, 138 (1976)). The Hospital's decision to terminate Kuznarowis because of irregularities in his narcotics management is a sufficient legitimate, non-discriminatory reason. Plaintiff has failed to rebut it.

Even if plaintiff had demonstrated a prima facie case of age discrimination, this Court finds that he failed to prove

that defendants' legitimate, non-discriminatory reason was pretextual as to those claims.

Defendant's motion for summary judgment will, with respect to Counts III and IV, be allowed.

### C. Retaliation

Plaintiff submits that, on separate occasions, he "complained about being yelled at" and about "being treated differently." Specifically, on October 6, 2014, Kuznarowis told his supervisors that "he felt that he was being singled out."

To make a prima facie case of retaliation, a plaintiff

> must show that (1) she undertook protected conduct; (2) she suffered an adverse employment action, and (3) the two were causally linked.

Cherkaoui v. City of Quincy, 877 F.3d 14, 28 (1st Cir. 2017) (quoting Noviello v. City of Boston, 398 F.3d 76, 88, (1st Cir. 2005)); Mole v. Univ. of Massachusetts, 442 Mass. 582, 591-92 (2004) (applying Massachusetts law).

Complaining about being yelled at by a boss is not protected by federal or state retaliation laws. Protected activities are actions "taken to protest or oppose statutorily prohibited discrimination." Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009); cf. M.G.L. c. 151B § 4(4) (making it an unlawful practice for an employer to "discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding" related to an MCAD complaint).

Plaintiff made no formal complaint of discrimination nor is there evidence that his comments about unfair treatment concerned discriminatory treatment. Having "a boss who is tough, insensitive, unfair or unreasonable" may be discomforting, Ahern v. Shinseki, 629 F.3d 49, 59 (1st Cir. 2010), but it is not prohibited under Title VII or M.G.L. c. 151B. Plaintiff has failed to demonstrate that he engaged in protected activity.

Plaintiff insists that "both complaints establish temporal proximity," but "chronological proximity does not by itself establish causality." Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003). The non-moving party at the summary judgment stage must set forth specific facts showing that there is a genuine, triable issue. See Celotex, 477 U.S. at 324. Plaintiff has failed to set forth such required facts demonstrating causation.

Finally, although the claim fails on its merits, the cursory explanation plaintiff offers with respect to his retaliation claims are insufficient and would result in a waiver of that claim in any event. See Photographic Illustrators Corp. v. Orgill, Inc., 118 F. Supp. 3d 398, 411 (D. Mass. 2015) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990)) ("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived.").

Defendant's motion for summary judgment will, with respect to Count VI, be allowed.

### D. Whistleblower claim

Plaintiff has not opposed defendant's motion for summary judgment as to his whistleblower claim. That claim is therefore waived. See id. Even if it were not waived it would be unavailing because the Massachusetts whistleblower statute applies only to public sector employees, which Kuznarowis was not. Welch v. Ciampa, 542 F.3d 927, 942 (1st Cir. 2008); M.G.L. c. 149 § 185(a)(2) (defining "employer" as "the commonwealth, and its agencies or political subdivisions, including, but not limited to, cities, towns, counties and regional school districts, or any authority, commission, board or instrumentality thereof."). The statute offers plaintiff no relief.

Defendant's motion for summary judgment will, with respect to Count VII, be allowed.

**ORDER**

For the foregoing reasons, defendants' motion for summary judgment (Docket No. 44) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 28, 2018